IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN E. BOLAND, *individually and on behalf of all others similarly situated*, | : : : : | 1:10-cv-00465 |
| Plaintiff, | : : | |
| v. | : : | |
| SELECT COMFORT CORPORATION, | : : : | |
| Defendant. | : | Hon. John E. Jones III |

# **MEMORANDUM**

## **August 6, 2010**

## **THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Before the Court in this declaratory judgment action is Defendant Select Comfort Corporation ("Defendant") Motion to Dismiss Plaintiff John E. Boland's ("Plaintiff") claims pursuant to Federal Rule of Civil Procedure 12(b)(6) ("the Motion"). (Doc. 12). Defendant filed the Motion on April 2, 2010, and a brief in support thereof (Doc. 20) on April 16, 2010. Plaintiff filed a brief in opposition to the Motion on May 21, 2010. (Doc. 23). Defendant then filed a reply on June 18, 2010. (Doc. 24). Accordingly, this matter is ripe for disposition.

For the reasons that follow, the Motion shall be granted and the matter closed.

1

## I. PROCEDURAL HISTORY

On March 2, 2010, Plaintiff filed a class action complaint ("the Complaint") against Defendant in the United States District Court for the Middle District of Pennsylvania. (Doc. 1). The Complaint is brought "on behalf of Plaintiff individually and a class of similarly situated consumers defined herein who purchased Sleep Number® beds and other products from [Defendant] that were sold as new when, in fact, they were refurbished." *Id*. at ¶ 1. The Complaint alleges three counts: (I) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law and substantially similar laws of other states, (II) breach of contract, and (III) unjust enrichment. *Id*. at ¶¶ 34-55.

Defendant filed the present Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on April 2, 2010. (Doc. 12).

## II. STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In resolving a motion to dismiss pursuant to

Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ---, ---, 129 S. Ct. 1937, 1949 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that "raise a right to relief above the speculative level . . . ." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate

3

that the defendant's liability is more than "a sheer possibility." *Iqbal*, 120 S.Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. *Iqbal*, 129 S.Ct. at 1950. Next, the district court must identify "the 'nub' of the . . . complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 127 S.Ct. 1964-65, 1969 n.8). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## III. BACKGROUND

Plaintiff is a resident of Harrisburg, Pennsylvania, who purchased a Sleep Number® bed from Defendant, a Minnesota-based corporation that manufactures, markets, and distributes beds and related accessories throughout the United States. (Doc. 1 at ¶¶ 1-3). In accordance with the standard of review applied to Rule 12(b)(6) motions, the following non-conclusory facts and inferences drawn therefrom are viewed in the light most favorable to the Plaintiff as the non-moving party.

Plaintiff alleges that on or after April 22, 2009, he received a direct mailing from Defendant advertising, "'See inside for our **NEW** Sleep Number® beds!' in large, bold print with an arrow pointing to the foregoing words with the word '**NEW**' therein, again in bold print." *Id.* at ¶ 14 (emphasis in original).[1] On May 7, 2009, Plaintiff spoke over the phone with one of Defendant's customer service agents "in response to the above-referenced solicitation" and ordered what he believed, "based on the advertisement," was a new Sleep Number® bed, for a total charge of $1,852.87. *Id.* at ¶ 15. The same day of the purchase, Plaintiff received a form e-mail from Defendant referring to "the new bed" and "your new Select

---

[1] Defendant has submitted as Exhibit D what it claims to be a true and correct copy of this mailing. *See infra*, note 8.

Comfort bed." *Id.* at 17. On or around May 23, 2009, Plaintiff received the bed from Defendant and subsequently discovered that the adjustable-firmness air mattress had a leak. *Id.* at ¶ 18. Plaintiff telephoned Defendant's customer service department, whereupon he was informed for the first time that the bed he had received was refurbished. *Id.* at ¶ 20.[2]

The first count Plaintiff alleges against Defendant is violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL" or "The Act"), 73 P.S. § 201-1 *et seq*. Specifically, Plaintiff claims that Defendant (1) represented that the products it sold to Plaintiff and members of the Class were new when in fact they were refurbished, in violation of § 201-2(4)(vi); and (2) made false and misleading statements of fact concerning the reasons for price reductions, in violation of § 201-2(4)(xi). *Id.* at ¶¶ 38-42.

Plaintiff's second count is for breach of contract. Plaintiff claims that there was a valid and enforceable contract between himself and members of the Class on

---

[2]The Complaint is not specific as to what exact part(s) of the bed is(are) refurbished. Defendant asserts that only certain "non-bed" components of returned products, such as the air pump, may be refurbished and incorporated into other products. *See* Doc. 20 at p. 2.
    Pennsylvania law regulates the use and sale of secondhand bedding products. *See* 35 P.S. § 972 *et seq*.; *id.* at 972 ("the provisions herein set forth shall be construed to cover and apply to . . . all mattresses, pillows, bolsters, feather beds, and other filled bedding of any description . . ."). Plaintiff accuses Defendant in a footnote of violating this law (Doc. 1 at ¶ 12 n.1), yet he does not plead that Defendant uses secondhand materials in any of the captioned products. As this fleeting accusation is unsupported and tangential to Plaintiff's claims, it will not be addressed further.

one hand and Defendant on the other for the sale of new, not refurbished, Sleep Number® beds. *Id*. at ¶ 47. Further, Defendant delivered products to Plaintiff and members of the Class that were refurbished, and claimants suffered damages as a result. *Id*. at ¶ 48.

Plaintiff's third and final count, which is pled in the alternative to Count II, is for unjust enrichment. Plaintiff claims that he and members of the Class conferred benefits on Defendant "by paying for products that Defendant represented were new or otherwise failed to disclose were refurbished"; that Defendant appreciated these benefits by accepting such payment; and that it is inequitable for Defendant to retain these benefits without its own payment of value. *Id*. at ¶¶ 52-54.

Plaintiff seeks to bring these allegations on behalf of the class of all residents of the United States who purchased products from Defendant "that were assembled, in whole or in part, from components returned to [Defendant] by other consumers and that [Defendant] represented were new or otherwise failed to disclose were refurbished," as well as a subclass of all such individuals who are residents of Pennsylvania, pursuant to and in fulfillment of the requirements of

Federal Rule of Civil Procedure 23. *Id*. at ¶¶ 22-33.³

In support of its Motion to Dismiss Plaintiff's Complaint, Defendant argues that each of Plaintiff's three counts fails to state a cause of action upon which relief may be granted and that the class claims should be dismissed and/or struck. (Doc. 20).

## IV. DISCUSSION

We have jurisdiction pursuant to 28 U.S.C. § 1332(d) because this is a class action in which at least one member of the alleged class of 100 or more persons is a citizen of a state different from the defendant and the amount in controversy allegedly exceeds $5,000,000. When exercising federal diversity jurisdiction, a federal court must apply the choice of law rules of the forum state. *Kruzits v. Okuma Machine Tool, Inc., et. al*, 40 F.3d 52, 55 (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 497 (1941)). Therefore, Pennsylvania choice of law rules apply in this action.⁴

### A. Count I

The Pennsylvania Unfair Trade Practices and Consumer Protection Law

---

³Plaintiff further pleads that 31 additional states and the District of Columbia have in place laws substantially similar to the Pennsylvania UTPCPL, all of which Defendant has violated. *Id*. at ¶ 43.

⁴Furthermore, Defendant does not dispute the applicability of Pennsylvania law with respect to Plaintiff's claims as an individual. *See* Doc. 20.

8

declares unlawful a specific set of unfair or deceptive acts in the conduct of trade or commerce. *See* 73 P.S. § 201-3.[5] The Act affords a private right of action to any person who purchases goods primarily for personal use and suffers a loss as a result of a practice barred by the Act. *See* 73 P.S. § 201-9.2(a).[6] Plaintiff alleges that Defendant engaged in two such practices, namely: "[r]epresenting that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand" (§ 201-2(4)(vi)); and "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions" (§ 201-2(4)(xi)).

Respecting the claim under (4)(vi), Plaintiff pleads, "Defendant represented that the products it sold to Plaintiff and members of the Class were new when in fact they were refurbished products . . . ." (Doc. 1 at ¶ 39).[7] However, there are only three communications from Defendant identified in the Complaint that could

---

[5]"Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xxi) of clause (4) of section 2 of this act and regulations promulgated under section 3.1 of this act are hereby declared unlawful." *Id*.

[6]"Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($ 100), whichever is greater." *Id*.

[7]We will address the propriety of all claims in relation to the Class as a whole in a separate section, below.

possibly serve as the basis for such a representation: the phone conversation with customer service in which Plaintiff ordered his bed, the mailed advertisement on which his order was based, and the subsequent e-mail message. *See id.* at ¶¶ 14-17.[8]

When Plaintiff spoke with the customer service agent on May 7, 2009, he ordered a "5000" model Sleep Number® bed, which the agent informed him was a "previous" model. (Doc. 14 at p. 8). The agent never described these beds as "new," instead referring to them as "outlet" models, which were heavily discounted and non-returnable, in contrast to their "current" models.[9] Thus, her

---

[8]Defendant submitted with its Motion, *inter alia*, Exhibits A and D, which Defendant declares are a true and correct audio recording of the aforementioned telephone conversation and a true and correct copy of the aforementioned advertisement mailing, respectively. *See* Doc. 15. Plaintiff does not dispute the authenticity of these documents, but he seeks to prevent our consideration of them as "matters outside the record." *See* Doc. 23 at p. 5.

Much to the contrary, Plaintiff's entire complaint rests on the notion that he received this advertisement and that, "in response," he "placed a telephone call" and ordered what he thought "based on the advertisement" was a new bed. (Doc. 1 at ¶¶ 14-15). In accordance with *Buck*, *supra* p. 3, we may consider these documents as they are matters incorporated by reference and integral to Plaintiff's claim. *See also Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("We now hold that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."); *id.* at 1196-1197 ("When a complaint relies on a document . . . the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished.").

[9]*See, e.g.*, *id.* at pp. 8, 10

> [Agent:] Okay, the, what you're seeing there is the 4000 and the 5000 models if that's what the brochure is on. That's our outlet beds. Its [*sic*] – uh. Outlet beds are our previous models.
> . . .
> So that you know, on our outlet beds, this is a final sale. . . it's a final

statements cannot be considered a representation to Plaintiff that the products were "new" for the purpose of this (4)(vi) claim.

The mailed advertisement Plaintiff identified as the basis for his purchase does not include any discussion of the bed or line of beds that he requested and purchased from Defendant. As Defendant points out, this mailing advertises its "new" line of beds – the "c," "p," and "i" models; it contains no reference to the older "5000" model that Plaintiff purchased. *See* Exhibit D; Doc. 20 at pp. 2-3.[10] Thus, this advertisement cannot have been a representation by Defendant that the 5000-model bed it sold to Plaintiff was "new."

Finally, Plaintiff pleads that on the day he placed his order, he received an e-mail from Defendant referring to "the new bed" and "your new Select Comfort bed." (Doc. 1 at ¶ 17). It is questionable whether or not such statements in the

---

> sale on the outlet because they're, there's so much discount on them that, that um, $1688 in our core line would be $2599.99. Okay? When you buy from our core line you have a 30-night in-home trial and if the bed isn't right for you, you can return it. When you get the outlet beds[,] because it's such a savings, it is a final sale.

[10]Defendant argues that, based upon the recorded phone conversation, it is apparent that Plaintiff was actually ordering his bed from a separate and distinct "closeout flier," which advertised the 4000 and 5000 models and indicated that some parts "may be refurbished." *See id*. at 4-5. However, we must accept as true Plaintiff's assertion that he based his order on the newer advertisement described in ¶ 14 of the Complaint for the purpose of this review. *See Phillips*, *supra*, at page 2. Even so, it would be *not* be reasonable for Plaintiff to infer that all Defendant's beds contain no refurbished parts on the basis of a flier advertising only certain "new" beds.

context of a personalized follow-up e-mail can be construed as making an affirmative representation that the bed purchased is not refurbished, as opposed to a casual reference to the particular item in relation to the buyer.  However, even if we were to accept the former interpretation, Plaintiff still fails to state a claim under § 201-2(4)(vi), because he cannot show that he suffered a loss *as a result of* the barred practice.  *See* 73 P.S. § 201-9.2(a), *supra*, note 6.  When he received the e-mail, he had already made his purchase, which is the point at which he allegedly suffered a loss.  *See* Doc. 1 at ¶ 37.  It defies logic to claim that he purchased the bed as a result of an e-mail that came after the purchase.  Thus, we find that Plaintiff has failed to plead sufficient facts to indicate that Defendant represented the bed it sold to Plaintiff was "new" in violation of § 201-2(4)(vi) and that Plaintiff suffered a loss as a result.

Regarding the claim under § 201-2(4)(xi), Plaintiff alleges, "Defendant made false and misleading statements of fact concerning the reasons for price reductions; namely, that the refurbished products sold to Plaintiff and members of the Class were offered at a reduced price because they were from its 'Factory Outlet' or were 'Warehouse Closeouts,' when in fact they were refurbished products that were assembled in whole or in part from components returned to

Defendant by other consumers." (Doc. 1 at ¶ 41).[11] However, Plaintiff fails to plead any facts suggesting that Defendant's statements actually *are* false or misleading. There may well be various reasons why a particular product is discounted, including both its quality of manufacture and the producer's motivation to sell; the facts do not suggest that Defendant deceptively concealed the former and puffed the latter. Without any facts whatsoever to support this naked assertion, the Complaint "stops short of the line between possibility and plausibility of entitlement to relief." *Twombley*, 550 U.S. at 557.

Accordingly, we find that Plaintiff has failed to plead sufficient facts to indicate that Defendant made false and misleading statements concerning the reasons for price reductions in violation of § 201-2(4)(xi).

**B.      Count II**

In Pennsylvania, a breach of contract claim requires the plaintiff to allege (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages. *See Chemtech Int'l, Inc. v. Chem. Injection Techs., Inc.*, 247 Fed. Appx. 403, 405 (3d Cir. 2007). Plaintiff

---

[11]"For example, Defendant advertises certain Sleep Number beds as 'closeouts' from its 'Factory Outlet' and the reason for price reduction is to sell its existing inventory of beds to make room for a new line of products when, in fact, the price reduction on these 'Factory Outlet' and 'Warehouse Closeouts' is due to the fact the products are refurbished products assembled in whole or in part from components returned to Defendant by other consumers." *Id*. at ¶ 42.

pleads that "there was a valid and enforceable contract between Plaintiff and members of the Class on the one hand and Defendant on the other, the essential terms of which were the sale of new, not refurbished, Sleep Number beds." (Doc. 1 at ¶ 47). Plaintiff further pleads that Defendant delivered products that were refurbished and thereby damaged Plaintiff and Class members. *See id*. at ¶¶ 48-49.

Because Plaintiff has not attached to the Complaint a written contract or made any reference to the same, we are left to assume that the contract Plaintiff describes came about as a result of his agreement to pay $1,852.87 in exchange for a 5000-model Sleep Number® bed. *See* Doc. 1 at ¶ 15; Doc. 14 at pp. 15-16. Defendant claims that the essential terms of this contract were "the sale of new, not refurbished, products" – but the facts he pleads in support thereof belie this conclusion. Once again, the only information pled with respect to this transaction was that Defendant mailed Plaintiff an advertisement and, in response, Plaintiff placed an order over the telephone for what he *believed* was a "new" bed. *See* Doc. 1 at ¶¶ 14-15; *supra*, note 10. Having reviewed the advertisement and phone transcript (*supra*, pp. 10-11), we find no indication that Defendant ever agreed that the bed sold to Plaintiff would be "new, not refurbished."

Therefore, Plaintiff has failed to plead facts plausibly alleging that Defendant breached a duty imposed by the contract of sale between them, and all

elements of a breach of contract claim cannot be satisfied.

### C. Count III

In the alternative to Count II, Plaintiff pleads unjust enrichment against Defendant. However, because we are satisfied that a contract of sale did exist between the parties, this claim is not pertinent. *See Benefit Trust Life Ins. Co. v. Union Nat'l Bank*, 776 F.2d 1174, 1177 (3d Cir. 1985) ("the quasi-contractual doctrine of unjust enrichment [is] inapplicable when the relationship between parties is founded on a written agreement or express contract."); Doc. 23 at p. 18, note 3. Accordingly, Count III shall be dismissed.

### D. Class Claims

Plaintiff seeks to bring the claims in the Complaint on behalf of the class of all residents of the United States who purchased products from Defendant "that were assembled, in whole or in part, from components returned to [Defendant] by other consumers and that [Defendant] represented were new or otherwise failed to disclose were refurbished." (Doc. 1 at ¶ 23). As we have explained, Plaintiff's claims as an individual are without merit and will be dismissed. Even if a new representative were to be obtained, however, these claims would be inappropriate for disposition pursuant to Federal Rule of Civil Procedure 23.

Such a class action would require individualized adjudication, akin to the

instant review, to determine what representations to each person had been made by Defendant regarding its products and sales. This would overwhelm common questions of law and fact in contravention of the predominance requirement of Rule 23(b)(3).[12] *See Brennan v. Rite Aid Corp.*, 263 F.R.D. 176, 177 (E.D. Pa. 2009) ("Each plaintiff's claim would require an individualized factual inquiry and application of law that makes a class action inappropriate.").[13] Indeed, the Complaint does not plead facts showing *prima facie* that Defendant made any fraudulent representations regarding its products to the general public whatsoever,[14] which renders the class claims inconsistent with Rule 23(b)(2),[15] as

---

[12]"[A class action may be maintained if Rule 23(a) is satisfied and if] the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id*.

[13]
> Plaintiff cannot establish commonality of law or fact or the typicality of her claims. At a minimum, each member of the putative plaintiff class would have to offer proof that she purchased a product from Rite Aid, the product was expired, and that plaintiff was ignorant of the expiration date. Depending upon the theory of recovery, the class members possibly would have to prove that they read and relied upon Rite Aid's Code of Ethics. All of these issues would require mini-trials before certifying the class and reaching the merits of the case. Each purchase of an expired product is a distinct and separate transaction. The proof that Ms. Brennan offers to support her claim will be inadequate to support a claim for other members of plaintiff class.

*Id*.

[14]The only specific communication between Defendant and the general public identified in the Complaint is the mailed advertisement of Defendant's "new" beds (Doc. 1 at ¶ 14), which the Complaint does not allege contained any refurbished materials.

well.

Having "thorough[ly] examin[ed] the factual and legal allegations" (*In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008)), we find that the Complaint fails to plead sufficient facts to show that Plaintiff or any individuals have been harmed by Defendant in the ways heretofore alleged, and that adjudication of these claims as a class action pursuant to Rule 23 is inappropriate and meritless. We will grant Defendant's motion to dismiss the Complaint in its entirety.

## V. CONCLUSION

For the reasons articulated above, we find that Plaintiff has failed to state a claim against Defendant upon which relief may be granted, and thus the Motion to Dismiss Plaintiff's Complaint shall be granted on those grounds. An appropriate order shall follow.

---

The Complaint does reference a second advertisement from Defendant (*supra*, note 11), which displays its "closeout" models. While a direct examination of this advertisement (submitted as Defendant's Exhibit C) was unnecessary for the purpose of adjudicating the sufficiency of Plaintiff's pleadings, it should be noted with respect to putative class claims that this advertisement does specify twice that the beds at issue contain parts that "may be refurbished." *See* Doc. 20 at pp. 4-5; Exhibit C; *supra*, note 10.

[15]"[A class action may be maintained if Rule 23(a) is satisfied and if] the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Id*.